454 A.2d 108

**COMMONWEALTH of Pennsylvania**

v.

**Frederick ARELT, Appellant.**

Superior Court of Pennsylvania.

Argued June 15, 1982.

Filed Dec. 17, 1982.

Petition for Allowance of Appeal Denied March 28, 1983.

238

Robert L. Campbell, Pittsburgh, for appellant.

Kenneth Benson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

This is an appeal from the Order of October 2, 1981 denying Appellant's Motion to Dismiss Indictment on Plea of Double Jeopardy. For the following reasons, we affirm.

Appellant was arrested on January 16, 1981 for the shooting death of Eric Nemec, a co-worker of Appellant. An information was filed on February 27, 1981 charging

him with criminal homicide.[1] A jury trial was originally scheduled for June 22, 1981. As a result of schedule conflicts and the need for additional time for case preparation, the trial date was rescheduled to July 13, 1981. On that date, Appellant appeared in open court before the Honorable James P. McGregor and after waiving his right to a trial, entered a general plea of guilty to the charge. It was agreed that Judge McGregor would determine the degree of homicide upon the conclusion of the Commonwealth's evidence and after presentation of psychiatric testimony by the defense. Upon the conclusion of the Commonwealth's case and after presentation of testimony by one defense witness, a continuance was granted until August 5, 1981 because of the inability of Appellant's expert witnesses to be present in court.

Subsequent to the July 13th hearing, certain allegedly prejudicial letters were written by members of the victim's family and directed to, inter alia, Judge McGregor, the district attorney and certain members of the media. The letters included several references to certain evidence not presented in the Commonwealth's case and in general were highly critical of the presentation of the Commonwealth's case and were clear concerning the writers' hatred of Appellant. The letters communicated the writers' fears that Appellant would not be convicted of first degree murder because of the inadequacies of the presentation of the Commonwealth's case.

Appellant thereafter filed a motion to withdraw his guilty plea which was subsequently granted by Judge McGregor, who also recused himself from any further consideration or deliberation in the case.

Upon reassignment of the case to a different judge, Appellant filed a Motion to Dismiss on the basis of double jeopardy. The motion was denied on October 2, 1981 and this appeal followed.

1. 18 Pa.C.S.A. § 2501(a).

240 

The sole issue presented is whether the prejudicial extra-judicial conduct of the victim's family resulting in withdrawal of Appellant's guilty plea and recusal of the judge who presided over its entry constitutes a bar to subsequent trial on the grounds of the double jeopardy clause of the United States Constitution.[2]

 It is clear that a pre-trial order denying a motion to dismiss on double jeopardy grounds constitutes a final order and is immediately appealable. *Commonwealth v. Bue-chele,* 298 Pa.Super. 418, 444 A.2d 1246 (1982).

Appellant contends that the instant case involves a double jeopardy framework analogous to those involving prosecu-torial overreaching. He alleges that the acts of the victim's family should be imputed to the prosecution and that their extrajudicial actions allegedly attempting to abort the pro-ceedings destroyed the integrity of those proceedings and bar any further reprosecution of Appellant on these charges.

> The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz,* 424 U.S. 600, 606 [96 S.Ct. 1075, 1079, 47 L.Ed.2d 267] (1976). As part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689 [69 S.Ct. 834, 837, 93 L.Ed. 974] (1949). The Double Jeopardy Clause, however, does not offer a guaranty to the defend-ant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States v. Jorn,* 400 U.S. 470, 483–484 [91 S.Ct. 547, 556–557, 27 L.Ed.2d 543] (1971) (plurality opinion); *Wade v. Hunter, supra* [336 U.S.] at 689 [69 S.Ct. at 837]. If the law were otherwise, "the purpose of law to protect

**2.** U.S.C.A. Const.Amend. 5. The double jeopardy provision of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again." *Wade v. Hunter, supra,* at 689 [69 S.Ct. at 837].

*Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422 (1982) (footnote omitted).

■ The prohibition of double jeopardy, as it relates to subsequent prosecutions, is irrelevant until jeopardy has once attached. *Commonwealth v. Potosnak,* 289 Pa.Super. 115, 432 A.2d 1078 (1981). Jeopardy attaches in a nonjury prosecution when the court has begun to hear evidence. *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979) (Per Nix, J., with two Justices concurring), *cert. denied, Klobuchir v. Pennsylvania,* 445 U.S. 952, 100 S.Ct. 1602, 63 L.Ed.2d 787 (1980), *reh. denied,* 446 U.S. 947, 100 S.Ct. 2178, 64 L.Ed.2d 804 (1980). Since the court had accepted Appellant's guilty plea, jeopardy had attached. *See Commonwealth v. Klobuchir, supra.*

■ Once jeopardy has attached, a voluntary request by a defendant for a mistrial or new trial is not a bar to reprosecution unless the defendant's motion was caused by prosecutorial overreaching. *Commonwealth v. Custor,* 296 Pa.Super. 235, 442 A.2d 746 (1982). We have previously held that the request for a withdrawal of a guilty plea is analogous to the request at trial for a mistrial. *Commonwealth v. Potosnak, supra.*

In this regard, we have stated:

The law concerning the effect of intentional prosecutorial misconduct on reprosecution as applied to double jeopardy is found in *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Starks,* 490 Pa. 336, 416 A.2d 498 (1980) and in *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978). These cases state that retrial will be barred when prosecutorial misconduct arises to the level of "overreaching." Two types of overreaching have been enunci-

ated by the United States Supreme Court. The first involves prosecutorial misconduct designed to provoke a mistrial in order to secure a more favorable opportunity to convict. *United States v. Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276. The second type is prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. *Lee v. United States*, 432 U.S. at 33, 97 S.Ct. at 2147, 53 L.Ed.2d at 89.

However, the Supreme Court of the United States has stated that "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079–80, 47 L.Ed.2d at 274, quoting *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971) (footnote omitted), see also *Lee v. United States, supra; Commonwealth v. Starks, supra.*

*Commonwealth v. Potosnak*, 289 Pa.Super. at 122, 432 A.2d at 1081–82.

■ Also, the U.S. Supreme Court has held that prosecutorial misconduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, does not bar retrial absent *intent* on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *Oregon v. Kennedy*, 456 U.S. at 675–76, 102 S.Ct. at 2089, 72 L.Ed.2d at 424.

Appellant wishes this court to impute the alleged misconduct of the victim's family to the prosecution and thereby declare the prosecution guilty of overreaching. This we will not do.

■ It is undisputed that the cause of Appellant's withdrawal of his guilty plea was the prejudicial effect of the letters written by the victim's family to various parties, including the judge who presided over the guilty plea hearings. Appellant has presented no evidence that the actions

of the victim's family were prompted in any way by the actions or desires of the prosecution to terminate the proceedings in the instant case. In fact, it appears from the record that the letters were prompted by the belief of certain members of the victim's family that the prosecution of the case was inadequate in terms of the presentation of evidence against Appellant. Clearly, the relationship between the family of the victim and the assistant district attorney responsible for presenting evidence against Appellant was antagonistic. Therefore, proof of *intent* that the prosecution desired Appellant to withdraw his guilty plea could result in reprosecution being barred by double jeopardy. *Oregon v. Kennedy, supra.* The evidence in the instant case indicates the opposite; the prosecution did not wish this prosecution to be terminated.

We will not impute misconduct by third parties to the prosecution thereby barring reprosecution where there is an absence of evidence indicating that the prosecution either initiated or encouraged such misconduct by the third party, either directly or indirectly.

The order of October 2, 1981 is affirmed.