J-A08038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAYCIN STILLWAGON | : | |
| | : | |
| Appellant | : | No. 871 WDA 2022 |

Appeal from the Order Entered July 21, 2022
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000993-2019

BEFORE: STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: APRIL 21, 2023**

Jaycin Stillwagon (Stillwagon) appeals *pro se* from the order filed in the Court of Common Pleas of Fayette County (trial court) denying her motion to dismiss the criminal charge of interference with custody of children, 18 Pa.C.S. § 2904(a), based on double jeopardy.[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This appeal is properly before us.  "Pennsylvania law [] traditionally provided a criminal defendant the right to an immediate appeal from an order denying a pretrial motion to dismiss on double jeopardy grounds."  ***Commonwealth v. Gross***, 232 A.3d 819, 830 (Pa. Super. 2020) (*en banc*) (citation omitted); ***see also Commonwealth v. Haefner***, 373 A.2d 1094, 1095 (Pa. 1977) (stating that "pretrial orders denying double jeopardy claims are final orders for purposes of appeal"); Pa.R.Crim.P. 587(b)(6).

1

## I.

We take the relevant factual background and procedural history from the trial court's July 21, 2022 opinion and our independent review of the record.

## A.

Stillwagon and Tyler Stouffer (Stouffer) shared custody of their 13-year-old daughter (Child) subject to a 2016 custody order that gave Stouffer, the father, custody of Child every other weekend for four hours. Stouffer filed a motion for contempt of court because Stillwagon was not complying with the custody order.[2] Having failed to appear at the hearing on the contempt motion, a bench warrant was issued for Stillwagon's arrest and the trial court, by the Honorable Steve P. Leskinen, who was assigned to the custody matter, entered the following order:

> AND NOW, March 5, 2019, after hearing of which the defendant, Jaycin Stillwagon, acknowledges having received

---

[2] Section 5323 of the Domestic Relations Code authorizes a court to sanction for contempt for failure to comply with a custody order:

(g) Contempt for noncompliance with any custody order

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

23 Pa.C.S. § 5323(g)(1)(i)-(ii).

notice and as to which she has offered no explanation or excuse for her failure to attend other than her assertion that she received notice late, the Court finds that the defendant knew of the hearing no later than Friday, March 1, 2019, and has no valid explanation or excuse for her failure to appear. As a result, she is in Contempt of Court for her failure to appear this date.

In addition , the Court finds that she is in Contempt of Court for failing to honor the schedule for visits between the child … and the child's court-appointed -counsel and the -child's court appointed guardian *ad litem*, having missed all three scheduled appointments which were scheduled at times she requested without providing any explanation or excuse for her failure to produce the child.

In addition, she is in Contempt of Court for failing to allow the child to proceed with father on each and every scheduled partial custody date since September 2, 2018, a total of twenty-seven (27) days and overnights. For all such contempts, the Court sentences her to a period of incarceration at the Fayette County Prison until she is able to comply with the following purge conditions:

1. After she is detained, the Court will reschedule a sanctions hearing as soon as possible, ideally within seventy-two (72) hours. The Court will hold the hearing with her present. At said hearing, in addition to the defendant, Jaycin Stillwagon, the child must also be present.

2. The child is to be provided to guardian *ad litem* and to the child's court appointed counsel for a meeting at their office, at which time the defendant is not to be present in the room with the guardian *ad litem* and counsel as it is to be a private meeting between the child, the guardian *ad litem* and counsel for the child.

The defendant is ORDERED to report to the Fayette County Prison forthwith to begin serving the sentence herein imposed.

In addition, the Court issues a bench warrant for the defendant's immediate arrest and directs that she be incarcerated at the Fayette County Prison until the foregoing purge conditions can be complied with.

At such time that mother is incarcerated, the plaintiff, Tyler Stouffer, is permitted to obtain custody of the child to begin "makeup" time for the twenty-seven (27) custodial days and nights that he has missed.

Plaintiff will be permitted to make use of a constable or other police officer in order to effectuate any transfer and is specifically permitted to pick up child at school at the end of school or any time during the day insofar as custody has been denied for approximately six (6) months without any just cause or excuse.

(Order, 3/05/19).

Both parties concede the bench warrant was not served and Stillwagon was never incarcerated. Within 72 hours, on March 7, 2019, after Child met with the Guardian *Ad Litem* (GAL), the trial court modified the custody order by suspending Stillwagon's legal custody as well as imposing provisions implementing that suspension. No criminal sanctions, i.e., incarceration or fines, were imposed for being held in contempt for not abiding by the previous custody order.

On March 7, 2019, the Pennsylvania State Police (PSP) charged Stillwagon with a violation of 18 Pa.C.S.§ 2904(a),[3] interference with custody of children, for:

knowingly or recklessly tak[ing] or entic[ing] … the juvenile female (age 13) from the custody of her parent … when THE DEFENDANT had no privilege to do so, in violation of Section 2904(a) of the PA Crimes Code. TO WIT: THE DEFENDANT did

---

[3] This provision defines that offense as "A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." 18 Pa.C.S. § 2904(a).

4

> violate Court Order No. 2129 of 2007, GD, … from September 2, 2018 to present, the DEFENDANT has refused to allow the victim to participate with the court ordered visitation.

(Police Criminal Complaint, 3/06/19, at 2)[4] (Interference Charge).[5]

**B.**

Stillwagon then filed a counseled motion to dismiss the charge on double jeopardy grounds. She contended that the criminal charge was barred by double jeopardy because the Interference Charge sought to punish for the

---

[4] To the extent that Stillwagon complains in her statement of questions involved that the GAL also improperly recommended that the criminal charges in this matter be filed, the claim is underdeveloped and we do not find it persuasive to the issue before us.

[5] Before double jeopardy precludes a prosecution, there must have been a conviction. Recently, Justice Donahoe of our Supreme Court, in a concurring opinion in ***Commonwealth v. Coleman***, 285 A.3d 599 (Pa. 2022), discussed what constituted a conviction, stating:

> Over the years, this Court has attributed to the word "convicted" and its various permutations (*e.g.*, "conviction") a "popular" as well as a "technical" meaning. The "popular" meaning of "convicted" refers to a guilty verdict. In other instances, this Court has applied a "technical" meaning to "convicted," which has been understood as a judgment or sentence upon the finding of guilt. In the past, this Court acknowledged that the "technical" meaning should be applied except where the statutory language demonstrates a contrary intent.

***Coleman***, 285 A.3d at 615 (citations omitted). Further, before sanctions are imposed, a determination of whether the contempt is civil or criminal cannot be made.

We also note that "[a]n order of contempt is final and appealable when the order contains a present finding of contempt and imposes sanctions." ***In re K.K.***, 957 A.2d 298, 303 (Pa. Super.2008) (citations omitted).

5

same conduct for which the March 5, 2019 order held her in contempt. (***See*** Motion to Dismiss Criminal Information, 7/23/20, at ¶¶ 8-10). After the Commonwealth responded on August 4, 2020, Honorable Thomas S. Ling Sr., who was assigned to hear the double jeopardy motion, denied the motion the same day without a hearing or findings of fact and conclusions of law.

Stillwagon appealed and the trial court granted counsel's motion to withdraw. We then vacated the trial court's order denying Stillwagon's motion to dismiss on procedural grounds. (***See Commonwealth v. Stillwagon***, 262 A.3d 479 (Pa. Super. filed Aug. 10, 2021), unpublished memorandum). We instructed the trial court, on remand, to: (1) conduct a ***Grazier***[6] hearing to determine if Stillwagon's waiver of counsel was knowing, intelligent and voluntary; (2) conduct a hearing on her motion to dismiss based on double jeopardy pursuant to Rule 587(b);[7] and (3) if the court denies the motion to dismiss, determine if it is frivolous. (***See id.*** at 479).

On remand, after holding a ***Grazier*** hearing, the trial court found that Stillwagon's waiver of counsel was intelligent, knowing and voluntary. It also held a hearing on her motion to dismiss the Interference Charge on double

---

[6] ***Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998).

[7] Rule 587(b) provides, in pertinent part, that a court "shall" hold a hearing on a motion to dismiss on double jeopardy grounds and "shall enter on the record a statement of findings of fact and conclusions of law and shall issue an order granting or denying the motion." Pa.R.Crim.P. 587(b)(3). If the court denies the motion, it must "determine if it is frivolous." ***Id.*** at 587(b)(4).

6

jeopardy grounds. Although finding the double jeopardy claim was not frivolous, the court found that it lacked merit because the contempt order was civil and double jeopardy did not apply. In its supporting memorandum opinion, the trial court reasoned that:

> The March 5, 2019 contempt order in the civil case No. 2129 of 2007, G.D., was issued for failure to appear at a custody hearing without leave of court. Secondly, there was a finding of contempt for failure to comply with the existing custody order. The other contempts in the March 5, 2019, civil order dealt with failure to have the child meet with appointed counsel and guardian ad litem. Neither failure to appear at a hearing or failure to have a child meet with a guardian or legal counsel have any relation to 18 Pa.C.S. 2904(a). The question then remains did the contempt of court for failure to comply with the custody order constitute criminal punishment. It is noted the bench warrant issued directed the Defendant be taken to the county jail, but only until a hearing could be scheduled, which, pursuant to the March 5, 2019, order would be within 72 hours. No fine of any type was imposed, in fact, the March 5, 2019, order states the hearing to be scheduled would be a sanctions hearing. The entire thrust of the Court's March 5, 2019 order is to obtain compliance with existing order and not to impose punishment. The fact the Defendant was ordered to be held in jail would appear to be to facilitate a hearing, not impose punishment.

(Trial Court Opinion, 7/21/22, at 4-5).

Stillwagon again filed a timely notice of appeal arguing that the trial court erred in denying her motion to dismiss the criminal action because the March 5, 2019 contempt order was not civil but was indirect criminal contempt, "[t]herefore, the criminal prosecution for the same conduct was subject to a plea of double jeopardy."[8] (Stillwagon's Brief, at 43).

---

[8] It is long settled that:

**II.**

**A.**

"The Double Jeopardy Clause, applicable to the States through the Fourteenth Amendment, provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" ***Commonwealth v. Jackson***, 10 A.3d 341, 344-35 (Pa. Super. 2010) (citing U.S. CONST. amend. 5) (case citation omitted). "Furthermore, the Double Jeopardy Clause [] protects against a second prosecution for the same offense after acquittal. And it protects against multiple punishments for the same offense." ***Id.*** (citation omitted). In ***Commonwealth v. Gross***, 232 A.3d 819 (Pa. Super. 2020), we stated that for double jeopardy to attach there had to be an earlier conviction, stating:

> Importantly, "The prohibition of double jeopardy, as it relates to subsequent prosecutions, is irrelevant until jeopardy has once attached." ***Commonwealth v. Arelt***, 308 Pa. Super. 236, 454 A.2d 108, 111 (1982). In the context of a plea deal, jeopardy does not attach to crimes, which were dropped as part of a guilty plea agreement. ***Commonwealth v. Tabb***, 491 Pa. 372, 376, 421 A.2d 183, 186 (1980), *cert. denied*, 450 U.S. 1000, 101 S. Ct. 1708, 68 L.Ed.2d 202 (1981) (describing concept of continuing

---

An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

***Commonwealth v. Sanchez***, 262 A.3d 1283, 1288 (Pa. Super. 2021), *appeal denied*, 278 A.3d 853 (Pa. 2022) (brackets and citation omitted).

8

jeopardy but holding that concept does not protect defendant against retrial for crimes he pled guilty to, where plea is voided on appeal through defendant's own procurement). By the same token, the dismissal of a charge in federal court, as part of a plea deal, does not represent a conviction or an acquittal that might prevent a subsequent prosecution in state court. ***Commonwealth v. Schmotzer***, 831 A.2d 689 (Pa. Super. 2003), appeal denied, 577 Pa. 695, 845 A.2d 817 (2004).

***Gross***, 232 A.3d at 835.

Once a prior conviction was established, the Court applies the ***Blockburger***[9] test, pursuant to which:

> [T]he "same-elements" test of ***Blockburger*** has long been followed in this Commonwealth and its application requires a comparison of the elements of the offenses to determine whether each offense requires proof of a fact which the other does not. When making such a comparison, overlap in proof between the two prosecutions does not establish a double jeopardy violation.

***Jackson***, 10 A.2d 341 at 345.

In conducting that analysis when criminal contempt is involved, "[W]e must look to the specific offenses at issue in the contempt proceeding and compare the elements of those offenses with the elements of the subsequently charged criminal offenses." ***Commonwealth v. Yerby***, 679 A.2d 217, 221 (Pa. 1996). "If they are the same, or if one is a lesser included offense of the other, double jeopardy attaches and the subsequent prosecution is barred***.***" ***Id.*** "The focus, then, is on the offense(s) for which the defendant was actually held in contempt." ***Id.***

---

[9] ***Blockburger v. United States***, 284 U.S. 299 (1932).

Unlike civil contempt, which does not implicate double jeopardy, where a party is found in direct criminal or indirect criminal contempt, double jeopardy will attach if the **Blockburger** test is met. Because the Commonwealth contends the contempt at issue is civil in nature, we must determine whether the contempt order was civil or criminal.

**B.**

"Contempt of court may be classified as civil or criminal in nature. The distinction between the two categories lies in the purpose behind the court's finding of contempt. If the dominant purpose of the court is to prospectively coerce the contemnor into compliance with the court's directive, the adjudication is one of civil contempt. However, if the court's dominant purpose is to punish the contemnor for disobedience of the court's order, the adjudication is one of criminal contempt." **In the Interest of C.W.,** 960 A.2d 458, 466 (Pa. Super. 2008) (citation omitted). If a person is found guilty of direct or indirect criminal contempt, a subsequent prosecution is barred if the **Blockburger** test is met.

Criminal contempt may be classified as either direct or indirect. "A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or misbehavior so near thereto as to interfere with the immediate business of the court." **Fenstamaker v. Fenstamaker**, 487 A.2d 11, 14 (Pa. Super. 1985) (citation omitted). "A charge of indirect criminal contempt consists of

10

a claim that a violation of an order or decree of court occurred outside the presence of the court." ***Commonwealth v. Ashton***, 824 A.2d 1198, 1203 (Pa. Super. 2003) (citation omitted). "Criminal contempt is a crime punishable by imprisonment or fine; sentences of imprisonment for contempt must be imposed according to the Sentencing Code, 42 Pa.C.S. § 9701." ***In Interest of E.O.***, 195 A.3d 583, 586 (Pa. Super. 2018) (citing ***Commonwealth v. Falkenhan***, 452 A.2d 750, 757 (Pa. Super. 1982)).

## C.

In this case, the March 5, 2019 order found that Stillwagon was in contempt for three reasons, making it necessary to examine each one separately to determine whether they give rise to a claim of double jeopardy.

First, Stillwagon was held in contempt because she did not appear at the scheduled court hearing on the contempt motion and the court ordered her incarcerated until a "sanctions" hearing was held. Her incarceration was ordered both to punish her for failing to appear and make sure that she appeared at the "sanctions" hearing. Even though she was never jailed, and the purpose of this provision is both to punish her and make sure that she appeared, the dominant purpose is criminal in nature because there was nothing she could do to purge herself of contempt. Furthermore, because it took place outside of the presence of the judge, it was indirect criminal contempt. However, double jeopardy does not attach because incarceration

11

for failing to appear for court has no common elements with the Interference Charge.

The second reason she was held in contempt was for failing to honor scheduled visits between Child and Child's court-appointed counsel and GAL. No sanctions were imposed in the March 5 or March 7, 2019 orders for that failure. Moreover, because failure to have a child meet with a GAL or legal counsel has no common elements with an Interference Charge, which requires that a person take a child under the age of 18 from the custody of its guardian, and because none of those individuals were Child's guardian, it also would not meet the **Blockburger** test. Moreover, no criminal sanctions were imposed for this failure.

Finally, Stillwagon was found to be in contempt because she failed to allow Stouffer to have Child on each scheduled partial custody date since September 2, 2018, a total of twenty-seven (27) days and overnights. Double jeopardy is implicated because the same conduct that would have to be proved to make out the Interference Charge was required to be made out to be convicted of contempt for the above conduct.

In an unreported decision in **Commonwealth v. Thompson**, 284 A.3d 932 (Pa. Super. filed Aug. 22, 2022), at issue was whether double jeopardy bars a prosecution for the interference with the custody of children when the charge is based on the same conduct for which a defendant was convicted of indirect criminal contempt. In that case, the defendant did not return the

child to mother at the end of his custody period several times, and based on noncompliance with the standing orders, the court found him in indirect criminal contempt and sanctions were imposed. The next day, he was charged with Interference with Custody of Children, 18 Pa.C.S § 2904. The defendant challenged the bringing of this charge because the finding of indirect criminal contempt constituted double jeopardy. We held that double jeopardy attached because for the Commonwealth to make out a charge under18 Pa.C.S. § 2904(a), it would have to prove that the defendant (1) knowingly took a child under the age of 18 from the custody of its guardian (2) when he had no privilege to do so, the same conduct required to find the defendant in indirect criminal contempt. While this case is like **Thompson,** there is an important difference: criminal sanctions were imposed in that case, while in this case, no criminal sanctions were imposed.

Section 5323 of the Domestic Relations Code, 23 Pa.C.S. § 5323(g)(1)(i)-(ii), authorizes a court to sanction for contempt for failure to comply with a custody order by imposing a fine or imprisonment. Under the March 5, 2019 order, Stouffer was given make-up time for the visits missed, and under the March 7, 2019 order, Stillwagon's legal custody was suspended. Those "sanctions" were ordered because the trial court found that they were in the best interest of Child, and though they may have had an adverse impact on Stillwagon, they were not criminal sanctions implicating double jeopardy. While she was held in contempt for conduct required to convict on the

Interference Charge, because no criminal sanction was imposed, the contempt was civil in nature and double jeopardy does not attach.

Accordingly, based on all the foregoing, Stillwagon is not due any relief on the trial court's order denying her motion to dismiss based on double jeopardy.

Order affirmed.

Judge Stabile joins the memorandum.

Judge Sullivan files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/21/2023